OAO91 (Rev. 12/03) Criminal Complaint

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
SHARLENE P. ABRAMS
15730 Linda Avenue
Los Gatos, CA 95032

**CRIMINAL COMPLAINT**

Case Number: 3-08-70228-JL

FILED
APR 15 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __April 15, 2002__ in __Santa Clara__ County, in the __Northern__ District of __California__ defendant(s) did,

(Track Statutory Language of Offense)

**SEE ATTACHED**

in violation of Title _____ United States Code, Section(s) _____.

I further state that I am a(n) __Special Agent, Internal Revenue Service__ and that this complaint is based on the following facts:
                                         Official Title

Approved as to form _____
                    AUSA D. DENIER

Continued on the attached sheet and made a part of this complaint: ☒ Yes ☐ No

_____
Signature of Complainant

Tina Zwiefelhofer
Printed Name of Complainant

Sworn to before me and signed in my presence,

4/15/2008                                    at    San Francisco            California
Date                                                City                    State

JAMES LARSON        U.S. Magistrate Judge          _____
Name of Judge       Title of Judge                 Signature of Judge

**ATTACHMENT**

**COUNT ONE**: (26 U.S.C. § 7201)

On or about April 15, 2002 in the Northern District of California, the defendant

SHARLENE P. ABRAMS

then a resident of Los Gatos, California, who during the calendar year 2001 was married, did willfully attempt to evade and defeat a large part of the income tax due and owing by her and her spouse to the United States of America for the calendar year 2001, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service, wherein it was stated that their joint taxable income for said calendar year was the sum of $898,361, and that the amount of tax due and owing thereon was the sum of $520,388, whereas, as defendant SHARLENE P. ABRAMS then and there well knew and believed, their true joint taxable income for said calendar year was greater than the amount reported and an additional tax was due and owing to the United States of America.

In violation of Title 26, United States Code, Section 7201.

**COUNT TWO:** (26 U.S.C. § 7206(2))

On or about October 22, 2002 in the Northern District of California, the defendant

SHARLENE P. ABRAMS

then a resident of Los Gatos, California, did willfully aid and assist in, and procure, counsel and advise, the preparation and presentation to the Internal Revenue Service of a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for Amnon Landan and his spouse, for the calendar year 2001, which was false and fraudulent as to a material matter, as defendant SHARLENE P. ABRAMS then and there well knew and believed, in that said return reported

less total joint taxable income on Line 39 of Form 1040 than was required to be reported, and reported less alternative minimum taxable income on Line 21 of Form 6251 than was required to be reported.

In violation of Title 26, United States Code, Section 7206(2).

**COUNT THREE:** (26 U.S.C. § 7206(2))

On or about April 15, 2002 in the Northern District of California, the defendant

SHARLENE P. ABRAMS

then a resident of Los Gatos, California, did willfully aid and assist in, and procure, counsel and advise, the preparation and presentation to the Internal Revenue Service of a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for Kenneth Klein and his spouse, for the calendar year 2001, which was false and fraudulent as to a material matter, as defendant SHARLENE P. ABRAMS then and there well knew and believed, in that said return reported less total alternative minimum taxable income on Line 21 of Form 6251 than was required to be reported.

In violation of Title 26, United States Code, Section 7206(2).

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

I, TINA ZWEIFELHOFER, Special Agent, Criminal Investigation, Internal Revenue Service, Department of the Treasury, being duly sworn, state as follows:

I have conducted an investigation which included examination of corporate records of Mercury Interactive Corporation, review of sworn depositions taken from various witnesses, and personal interviews of witnesses. Based on my investigation, I have personal knowledge that Sharlene P. Abrams committed criminal offenses against the United States, namely:

**COUNT ONE**

ABRAMS did willfully attempt to evade and defeat a large part of the income tax due and owing by her and her spouse to the United States of America for the calendar year 2001, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service, wherein it was stated that their joint taxable income for said calendar year was the sum of $898,361, and that the amount of tax due and owing thereon was the sum of $520,388, whereas, as defendant ABRAMS then and there well knew and believed, their true joint taxable income for said calendar year was greater than the amount reported and an additional tax was due and owing to the United States of America.

**COUNT TWO**

ABRAMS did willfully aid and assist in, and procure, counsel and advise, the preparation and presentation to the Internal Revenue Service of a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for Amnon Landan and his spouse, for the calendar year 2001, which was false and fraudulent as to a material matter, as defendant ABRAMS then and there well

knew and believed, in that said return reported less total joint taxable income on Line 39 of Form 1040 than was required to be reported, and reported less alternative minimum taxable income on Line 21 of Form 6251 than was required to be reported.

**COUNT THREE**

ABRAMS did willfully aid and assist in, and procure, counsel and advise, the preparation and presentation to the Internal Revenue Service of a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for Kenneth Klein and his spouse, for the calendar year 2001, which was false and fraudulent as to a material matter, as defendant ABRAMS then and there well knew and believed, in that said return reported less total alternative minimum taxable income on Line 21 of Form 6251 than was required to be reported.

GENERAL ALLEGATIONS

1. At all times material to this Complaint, defendant SHARLENE P. ABRAMS ("ABRAMS") resided in Los Gatos, California, and between 1993 and November 2001, ABRAMS served as Chief Financial Officer for Mercury Interactive Corporation. At various times during this period, ABRAMS also served as Secretary and Vice President of Finance and Administration. ABRAMS had the additional title of Securities Compliance Officer as early as May 30, 1996, and was appointed a member of the stock option committee on July 15, 1999.

2. At all times material to this Complaint, Mercury Interactive Corporation ("Mercury") was a Delaware Corporation with its headquarters in Mountain View, California. Mercury was a publicly traded corporation that made software used to test and optimize information technology systems and software applications.

3. At all times material to this Complaint, Amnon Landan ("Landan") was Mercury's Chief Executive Officer and Kenneth Klein ("Klein") was Mercury's Chief Operating

2

Officer.

## STOCK OPTIONS AND THEIR TAX TREATMENT

4.  The term "stock option" refers to a right granted by a company to purchase a specific number of shares of the company's stock at a specified price for a pre-determined period of time.

5.  The term "employee stock option" refers to a stock option granted by a company to one of its employees. An employee to whom a stock option is granted typically must wait a specified vesting period before being allowed to exercise the option.

6.  "Exercise price" or "strike price" refers to the price at which the holder of an option will be permitted to purchase stock. That price is set on the day the stock option is granted.

7.  The term "vesting" refers to the ownership right that an employee acquires through length of service at the company. A vesting schedule requires that a specified period of time elapse after the options are granted before they can be exercised.

8.  The tax treatment of stock options depends upon the type of options received by the employee. During the relevant period, the Internal Revenue Code and associated regulations recognized two types of options received by employees: incentive stock options ("ISOs") and non-qualified stock options ("NQs"). ISOs are defined in Section 422 of the Internal Revenue Code; all other options are deemed NQs.

9.  A stock option agreement sets forth the terms of the options the company has granted to an employee. Such an agreement specifies the type of options (ISOs or NQs), the number of options, the exercise price, the vesting schedule, and the expiration date for the

3

options.

10. Federal tax laws require the payment of ordinary income tax on gains realized upon the exercise of NQs. Thus, if a person exercises NQs, thereby purchasing stock at a lower price than fair market value ("FMV") on that date, the difference between the purchase price and FMV is taxed as ordinary income.

11. Although federal tax laws typically do not require the payment of ordinary income tax upon the exercise of ISOs, the difference between FMV and the exercise price is included in alternative minimum tax ("AMT") income, which may trigger the imposition of the AMT. Profits from the sale of shares received through an exercise of ISOs may qualify to be taxed at the long-term capital gains rate, which is more favorable than regular income tax rates, provided other conditions are met.

## THE MERCURY STOCK OPTION PLANS

12. During the relevant period, Mercury granted options to its employees and executives under the 1989 Stock Option Plan and the 1999 Stock Option Plan, as amended at various times.

13. The purposes of the stock option plans were "to attract and retain the best available personnel for positions of substantial responsibility, to provide the additional incentive to such individuals of the Company and to promote the success of the Company's business."

14. Options granted under the stock option plans could be either ISOs or NQs, at the discretion of the Administrator and as reflected in the terms of the written option agreement.

15. Pursuant to the stock option plans, an option was exercised "when written notice of such exercise has been given to the Company in accordance with the terms of the Option by

4

the person entitled to exercise the Option and full payment for the Shares with respect to which the Option is exercised has been received by the Company."

## THE BACKDATING SCHEME

16. ABRAMS supervised the exercises of stock options for officers and executives. Officers and executives typically exercised their stock options and then held the stock for a period of time, usually at least one year to take advantage of the lower long-term capital gains tax rate.

17. In April and May 2001, ABRAMS orchestrated the backdating of stock option exercise dates for herself, Landan, and Klein in order to reduce the income taxes due on the gains realized by the exercises. ABRAMS searched for the low point in the price of Mercury stock and backdated the exercises for herself, Landan and Klein to April 4, 2001, the low point, to reduce the ordinary income tax upon the exercise of NQs or to reduce AMT income on the exercise of ISOs.

18. In August 2001, ABRAMS orchestrated the backdating of stock option exercise dates for herself in order to reduce the income taxes due on the gains realized by the exercises. ABRAMS searched for the low points in the price of Mercury stock and backdated the exercises for herself to the low points of July 18, 2001, and July 24, 2001, to reduce the ordinary income tax upon the exercise of NQs.

19. The backdated stock option exercises for ABRAMS in May and August 2001 are summarized in the following table:

| Option Number | Option Type | Option Price | Number of Shares | Backdated Date | Stock Price on Backdated Date | Actual Date of Exercise | Stock Price on Actual Date of Exercise |
|---|---|---|---|---|---|---|---|
| 1590 | NQ | $6.32 | 29,999 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |
| 1659 | NQ | $6.32 | 701 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |
| 1289 | NQ | $2.44 | 14,801 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |
| 778 | NQ | $12.03 | 18,333 | 7/18/01 | $34.19 | 8/3/01 | $39.15 |
| 1030 | NQ | $18.25 | 5,520 | 7/18/01 | $34.19 | 8/3/01 | $39.15 |
| 778 | NQ | $12.03 | 1,667 | 7/24/01 | $34.93 | 8/3/01 | $39.15 |

20. The backdated stock option exercises for Landan in April 2001 are summarized in the following table:

| Option Number | Option Type | Option Price | Number of Shares | Backdated Date | Stock Price on Backdated Date | Actual Date of Exercise | Stock Price on Actual Date of Exercise |
|---|---|---|---|---|---|---|---|
| 1494 | NQ | $3.19 | 14,832 | 4/4/01 | $31.88 | 4/9/01 | $40.44 |
| 1009 | ISO | $3.19 | 31,347 | 4/4/01 | $31.88 | 4/9/01 | $40.44 |
| 1009 | NQ | $3.19 | 237,821 | 4/4/01 | $31.88 | 4/9/01 | $40.44 |

21. The backdated stock option exercises for Klein in May 2001 are summarized in the following table:

| Option Number | Option Type | Option Price | Number of Shares | Backdated Date | Stock Price on Backdated Date | Actual Date of Exercise | Stock Price on Actual Date of Exercise |
|---|---|---|---|---|---|---|---|
| 507 | ISO | $3.10 | 4,376 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |
| 552 | ISO | $4.19 | 34,636 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |
| 1023 | ISO | $3.19 | 87,261 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |
| 1011 | ISO | $3.19 | 238,312 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |
| 352 | ISO | $2.32 | 1 | 4/4/01 | $31.88 | 5/3/01 | $67.41 |

## SUMMARY

Based on the foregoing, I hereby assert that probable cause exists to believe that SHARLENE P. ABRAMS are in violation of Title 26, United States Code, Sections 7201 and 7206(2), specifically, income tax evasion and aiding and assisting in the preparation of false tax returns.

*[signature]*
TINA ZWIEFELHOFER
Special Agent, Internal Revenue Service

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 15th DAY OF APRIL, 2008.

*[signature]*
HONORABLE JAMES LARSON
United States Magistrate Judge